USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

-against-                                                                      11-cv-0691 (LAK)

STEVEN DONZIGER,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER TO SHOW CAUSE WHY DEFENDANT STEVEN DONZIGER SHOULD NOT BE HELD IN CRIMINAL CONTEMPT

LEWIS A. KAPLAN, *District Judge.*

Steven Donziger is hereby

ORDERED, pursuant to Fed. R. Crim. P. 42, to show cause at a trial beginning at 9:30 a.m. on September 23, 2019 or such later date as the Court may fix, before the Honorable Loretta A. Preska, District Judge, in the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007, Courtroom 12A, why he should not be held in criminal contempt of court, pursuant to 18 U.S.C. §§ 401(3) and 2 and Fed. R. Crim. P. 42, on the following grounds:

### COUNT I
(Forensic Inspection Protocol ¶ 4)

1. On or about March 5, 2019, this Court entered an order in Chevron Corporation v. Steven Donziger, *et al.*, 11-cv-691 (LAK), entitled Forensic Inspection Protocol (the "Protocol").

2. Paragraph 4 of the Protocol provides:

"Within three (3) business days of entry of this Protocol, defendant Steven Donziger ('Donziger') shall provide to both the Neutral and Chevron's Forensic

Case 1:19-cr-00561-LAK Document 1 Filed 08/05/19 Page 2 of 10
Case 1:11-cv-00691-LAK-RWL Document 2276 Filed 07/31/19 Page 2 of 10

2

Experts via email a representation listing under penalty of perjury all devices he has used to access or store information or for communication since March 4, 2012 – including, but not limited to, personal computers, tablets, phones, and external storage devices, such as external hard drives and thumb drives – (the 'Devices'), indicating for each of the Devices whether he has possession, custody, or control of the Devices and, if not, stating the reasons why that is so, i.e., whether they were destroyed, lost, etc. and the present location of the Devices. Additionally, Donziger shall produce under penalty of perjury a list of all accounts – including, but not limited to, email accounts (including web-based email accounts); accounts (including web- or cloud-based) related to any document management services, such as Dropbox; and accounts related to any messaging services, such as WhatsApp, Facebook Messenger, instant messages, etc. – Donziger has used since March 4, 2012 (the 'Media'), indicating whether he presently has the ability to access those accounts and, if not, stating the reasons why that is so. At this time, prior discovery has revealed that Donziger used the following types of accounts to conduct business related to the Ecuadorian judgment:

    a)    Email addresses, including, but not limited to, sdonziger@donzigerandassociates.com, stevenrdonziger@gmail.com, steven.donziger@donfordcapital.com, and gringograndote@gmail.com;

    b)    A Dropbox account; and

    c)    A WhatsApp account."

    3.    Donziger, in disobedience of paragraph 4 of the Protocol, knowingly and wilfully failed fully to comply with the requirements thereof for all or part of the period commencing

on March 8, 2019 to and including May 28, 2019.

(18 U.S.C. § 401(3))

**COUNT II**

(Forensic Inspection Protocol ¶ 5)

4.  The Court repeats and realleges each of the allegations of paragraphs 1 through 3 hereof.

    5.  Paragraph 5 of the Protocol provides:

    "The Neutral Forensic Expert shall take possession of Donziger's Devices and have access to his Media for the purposes of making a mirror image of those Devices and Media. The Devices shall be surrendered to the Neutral Forensic Expert at Donziger's address at 245 West 104th Street, #7D, New York, NY 10025. The Neutral Forensic Expert shall take possession, custody, and control of the Devices and transport them directly to its offices for the imaging described herein. The devices shall be surrendered to the Neutral Forensic Expert at 12:00 pm at 245 West 104th Street, #7D, New York, NY 10025 on March 18, 2019. At no time shall Chevron's Forensic Expert have access to the original Devices or to live Media accounts absent further Court order.

    a)  On the date and time specified per the above, Donziger shall turn over all Devices in his possession, custody, or control to the Neutral Forensic Expert. Additionally, to the extent information contained in any of Donziger's accounts/media is not stored on any of Donziger's available Devices, Donziger shall provide the Neutral Forensic Expert with the information and/or things

4

necessary to access and image his accounts and media. The Devices shall be returned to Donziger without unnecessary delay after the completion of the imaging required herein by the Neutral Forensic Expert.

b)     If any user names, passwords, or other information is required to access any of the electronically stored information on any of the produced Devices or Media, Donziger shall provide such usernames, passwords, and other information to the Neutral Forensic Expert at the time of the imaging. Such information shall be kept strictly confidential by the Neutral Forensic Expert.

c)     Before beginning any work on the Devices and Media, the Neutral Forensic Expert will utilize a hardware write block device on the Devices and Media in order to protect the integrity of the existing data (or other techniques standard in the industry to protect the integrity of data).

d)     The Neutral Forensic Expert will create full forensic images of each Device and Media/Account. The forensic images of each shall include, to the extent possible, allocated, unallocated, and host protected areas. As part of the creation of the forensic images, the Neutral Forensic Expert will record on a log, where applicable: (1) the date and time at which the Device or Media was provided for forensic imaging and the date and time at which the Device or Media was imaged; (2) the time set in the BIOS or system clock at the time of imaging; (3) the "boot order" recorded in the BIOS of the Device or Media at the time of imaging; (4) the make, model, and serial number of the Device; (5) the username associated with any Media; (6) any identifying marks or labels on

5

any Device or Media; (7) the tool and/or method used to create the forensic images; and (8) MD5 and SHA1 hash values of the data collected from the Device or Media.

e) Upon completion of the imaging, the Neutral Forensic Expert will verify the resulting forensic images by executing the form attached hereto as Exhibit A and return the Devices and Media to Donziger.

f) The Neutral Forensic Expert then will create four (4) identical copies of the images of Donziger's Devices and Media, which shall be written to encrypted drives for security purposes. Within two (2) calendar days of the imaging of Donziger's Devices and Media, one copy shall be provided to Donziger, two copies shall be lodged with the Clerk of Court in a sealed envelope, and one copy shall be retained by the Neutral Forensic Expert. The Neutral Forensic Expert shall maintain the set of images created from Donziger's original Devices and Media unexamined and unaltered until further order from the Court. The Neutral Forensic Expert shall use the copy of the images that it retains for searches and analysis as proscribed by this Protocol."

6. Donziger, in disobedience of paragraph 5 of the Protocol, knowingly and wilfully failed to comply with the requirements thereof commencing on or about March 18, 2019 to at least on or about May 28, 2019.

(18 U.S.C. § 401(3))

### COUNT III

(Passport Surrender Order)

7. On June 11, 2019, this Court entered an order that provided in relevant part that: "Donziger, on or before June 12, 2019 at 4 p.m., shall surrender to the Clerk of the Court each and every passport issued to him by each and every nation to have issued a passport to him, the Clerk to retain possession thereof unless and until this Court determines that Donziger has complied fully with paragraphs 4 and 5 of the Protocol."

8. Said order was served on Donziger electronically on June 11, 2019.

9. Donziger, in disobedience of said order, knowingly and wilfully failed to comply with the requirements thereof by the required time or thereafter.

(18 U.S.C. § 401(3))

### COUNT IV

(RICO Judgment ¶ 1 – 2011 Retainer Agreement)

10. On March 4, 2014, this Court entered a judgment (the "RICO Judgment") in Chevron Corporation v. Steven Donziger, *et al.*, 11-cv-691 (LAK) against Donziger, among others.

11. The RICO Judgment contained the following definitions, among others:

(a) "'Amazonia' means Amazonia Recovery Limited, an entity registered in Gibralter, together with its successors and assigns."

(b) "'Donziger Defendants' means Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger Associates PLLC collectively."

7

(c) "'Donziger' means the Donziger Defendants, and each of them, unless the text hereof otherwise provides."

(d) "'Judgment' means the judgment entered in the Lago Agrio Case on February 14, 2011 as modified by subsequent proceedings." (This Judgment hereinafter is referred to as the "Ecuador Judgment").

(e) "'Lago Agrio Case' means Lawsuit No. 2003-0002, entitled *Maria Aguinda y Otros v. Chevron Corporation,* in the Sucumbíos Provincial Court of Justice of the Republic of Ecuador and all appeals with respect to any judgment, order or decree entered therein."

(f) "'Retainer Agreement' means the agreement, dated as of January 5, 2011, between and among (a) each of the individual plaintiffs in the Lago Agrio Case, together with their respective successors and assigns, (b) the ADF, (c) the Assembly, and (d) Donziger & Associates, PLLC, together with its successors and assigns and all successors to and predecessors of the Retainer Agreement."

3. Paragraph 1 of the RICO Judgment provided:

"The Court hereby imposes a constructive trust for the benefit of Chevron on all property, whether personal or real, tangible or intangible, vested or contingent, that Donziger has received, or hereafter may receive, directly or indirectly, or to which Donziger now has, or hereafter obtains, any right, title or interest, directly or indirectly, that is traceable to the Judgment or the enforcement of the Judgment anywhere in the world including, without limitation, all rights to any contingent fee under the Retainer Agreement and

Case 1:19-cr-00561-LAK-RWL Document 1 Filed 08/05/19 Page 8 of 10
Case 1:11-cv-00691-LAK-RWL Document 2276 Filed 07/31/19 Page 8 of 10

8

all stock in Amazonia. Donziger shall transfer and forthwith assign to Chevron all such property that he now has or hereafter may obtain."

12. At all times from March 4, 2014 to and including the date of this order, Donziger owned and controlled Donziger & Associates, PLLC, a/k/a Donziger Associates PLLC, a/k/a Donziger and Associates, PLLC.

13. At all times from March 4, 2014 to and including September 3, 2018, Donziger, directly or indirectly, and Donziger & Associates PLLC had property that was traceable to the Ecuador Judgment.

14. At all times from March 4, 2014 to and including September 3, 2018, Donziger, in disobedience of paragraph 1 of the RICO Judgment, knowingly and wilfully failed and refused to transfer or assign to Chevron property that he then had, directly or indirectly, traceable to the Ecuador Judgment, to wit, contractual rights to a contingent fee under the Retainer Agreement as that term is defined in the RICO Judgment, and knowingly and wilfully caused Donziger & Associates to fail and refuse to transfer said property.

(18 U.S.C. §§ 401(3) and 2)

### COUNT V

(RICO Judgment ¶ 1 – ADF Contingent Fee Grant)

15. The Court repeats and realleges each of the allegations of paragraphs 10 through 12 above.

16. On or about November 1, 2017, The Frente de Defensa de la Amazonia ("Amazon Defense Front" or "ADF"), the sole beneficiary of a "Judgment," as that term is defined

9

in the RICO Judgment, granted to Donziger a property right traceable to the Ecuador Judgment, to wit, *"an INTEREST in his own right equal to Mr. DONZIGER's existing contractual INTEREST. Such INTEREST, in any case, shall be understood to entitle Mr. DONZIGER to 6.3% of any FUNDS RECOVERED . . ."* in connection with the Lago Agrio Case or the Ecuador Judgment (the "ADF Property Right").

17. Donziger had the ADF Property Right on or about November 1, 2017 and at all times from that date to and including May 27, 2019.

18. At all times from on or about November 1, 2017 to on or about May 27, 2019, Donziger, in disobedience of paragraph 1 of the RICO Judgment, knowingly and wilfully failed and refused to transfer or assign to Chevron property that he then had, to wit, the ADF Property Right.

(18 U.S.C. § 401(3))

## COUNT VI

(RICO Judgment ¶ 5 – Personal Interest)

19. The Court repeats and realleges each of the allegations of paragraphs 10 and 11 above.

20. Paragraph 5 of the RICO Judgment provides in relevant part:

"Donziger . . . is hereby further enjoined and restrained from undertaking any acts to monetize or profit from the Judgment, as modified or amended, or any New Judgment, including without limitation by selling, assigning, pledging, transferring or encumbering any interest therein."

21. On or about December 23, 2016, Donziger, in disobedience of paragraph 5

10

of the RICO Judgment, knowingly and wilfully acted to monetize or profit from the Ecuador Judgment, to wit, by selling, assigning, pledging, transferring or encumbering a portion of his own personal interest in the Ecuador Judgment in exchange for personal services.

(18 U.S.C. § 401(3))

It is further

ORDERED, that the defendant appear personally before the Honorable Loretta A. Preska, District Judge, in the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007, Courtroom 12A on August 6, 2019 at 10:00 am for an initial conference.

Dated: July 30, 2019

_____
Lewis A. Kaplan
United States District Judge